UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Virinder K. Chaudhery,

    Plaintiff,

v.                                 Case No. 08-10601

Hamtramck Public Schools,       Honorable Sean F. Cox

    Defendant.
_____/

## OPINION & ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On February 22, 2008, Plaintiff brought this action against his employer alleging race, national origin, and age discrimination. The matter is currently before the Court on Defendant's Motion for Summary Judgment. The parties have fully briefed the issues and oral argument was heard on December 4, 2008. For the reasons below, the Court shall GRANT Defendant's Motion for Summary Judgment because Plaintiff has failed to establish a prima facie case of discrimination.

### BACKGROUND

On February 22, 2008, Plaintiff Virinder Chaudhery ("Plaintiff") filed this action against his employer, Defendant Hamtramck Public Schools ("Defendant" or "HPS") alleging: 1) race and national origin discrimination in violation of 42 U.S.C. § 2000e (Count I); and 2) age discrimination in violation of 29 U.S.C. § 621 (Count II).

Defendant filed the instant Motion for Summary Judgment on July 24, 2008. Because discovery was still open at that time, Plaintiff requested that the Court grant him an extension of

1

time for filing his brief in response to the motion. This Court granted that request, and entered an order providing that Plaintiff must file his response to the motion within 21 days after discovery closed. (Docket Entry No. 9). Discovery has since closed and Plaintiff filed his response to the motion on October 6, 2008.

The following are the facts that can be gleaned from the record.

Plaintiff's complaint indicates that he is 67 years old (*see* Compl. at ¶ 16) and states that Plaintiff's "national origin is East Indian and his race is Asian American." (Compl. at ¶ 8).

Plaintiff began his employment with Defendant in 1998, at which time he was a probationary teacher. (Ex. B to Def.'s Motion). Plaintiff taught various sections of science, math and reading. (Ex. 6 to Def.'s Reply Br.).

Plaintiff was later transferred to the position of "ESL/Bilingual Counselor/Hamtramck High School" effective August 21, 2000, after he applied for that position.[1] (Ex. B to Def.'s Motion). The job description for the "ESL/Bilingual Counselor" position is attached as Ex. 4 to Plaintiff's Response. (Ex. 4 to Pl.'s Br.). "Computer literacy" is one of the qualifications listed for the position. The job description also includes many other duties and responsibilities.

In June of 2004, Plaintiff asked Defendant to consider him for a position as a middle school principal and in that letter stated "I have several years of teaching and administrative experiences at the middle school, high school, and college levels" and "I have taught all subjects at all levels." (Ex. N to Def.'s Motion).

---

[1] Plaintiff submitted his resume to Defendant (Ex. J to Def.'s Br.) and that resume: 1) states he had prior teaching experience at the elementary and high school levels; 2) states that he has a teaching certificate to teach K-12; and 3) under the heading "Special Skills, Training, and Certifications," lists "Telecommunication/Production and Computer; Graphics, Audio-Visual, and Editing."

A HPS Memo dated December 13, 2006, stated that the district was "under a very difficult financial situation" and addressed a number of layoffs and reassignments that would be made as a result. (Ex. I to Def.'s Motion). With respect to Counselor positions, the Memo indicated that Terry LaFramboise was being laid off and that Plaintiff was being reassigned.

On December 14, 2006, Defendant sent Plaintiff a letter advising him that his position was being reassigned:

> Due to economic conditions and actions taken by the Board of Education, your current assignment as At-Risk Counselor at Hamtramck High School is being eliminated. You are being reassigned to a Computer Teacher position at the Horizon Campus. This is in accordance with the procedures outlined in the Hamtramck Federation of Teachers contract.
>
> This change in assignment will take place at the start of the second semester, which is Tuesday, January 16, 2007.

(Ex. G to Def.'s Motion).

Plaintiff has submitted his own affidavit (attached as Exhibit 1 to Plaintiff's Brief) that states:

> 8. A meeting occurred a few days before I received written notification that I was being reassigned. John McCaugney, James DeNardis, Felix Chow, and I were present. The topic of the meeting was whether my proposed reassignment complied with the requirements of the CBA and Article VI regarding seniority. Chow informed us at the meeting that our interpretation of the contract was correct and that Counselor Allan Harpan's position was to be eliminated because he had less seniority than me.
>
> 9. Approximately two hours later, I was notified by HFT that Chow had changed his mind and that my position was still being eliminated. I was then officially transferred to computer teacher. Doctor Chow indicated that what he had said and decided earlier was no longer acceptable to him.

(Plaintiff's Afft. at ¶¶ 8-9).

Plaintiff then began teaching the assigned computer class. It is undisputed that Plaintiff's salary remained the same after the reassignment. (Pl.'s Br. at 9). Plaintiff's Affidavit states that:

> 10. While in my position as computer teacher, I informed HPS that I had no background in computers either by formal training or personal use. I was never given any textbook to aid in teaching the class. Request for materials was denied and as a result I struggled in teaching the class. I also informed HPS that I could not type.

(Plaintiff's Afft. at ¶ 10).

Following the reassignment, Plaintiff filed a union grievance against HPS on January 8, 2007, stating:

> My reassignment subsequent to the elimination of a counselor position at HHS, to a teacher of computer classroom is in violation of ARTICLE VI, section 4, f, (regarding system wide seniority) and ARTICLE X, Section I A, & C (regarding Layoff and Recall). Elimination of a counselor position should be done using seniority.

(Ex. L to Def.'s Motion).

On July 19, 2007, Plaintiff filed a Charge of Discrimination based on race and national origin.

A "Memorandum of Understanding" between HPS and the Hamtramck Federation of Teachers Union, and the individual members involved in three grievances, including Plaintiff, was signed on September 7, 2007. (Ex. O to Def.'s Motion). The agreement provided the following with respect to Plaintiff:

> Settlement: Dr. Virinder Chaudhery
> The settlement includes the following key points:
> 1. Dr. Chaudhery will teach an elective course in arts to ELL students for 2007-08; Dr. Chaudhery will create the course syllabus, pacing chart, and/or lesson plan as expected of all high school teachers; he has the flexibility to incorporate any and all relevant contents, such as mathematical topics: geometric principles as applied in the arts.

2. Administration will be flexible to accept Dr. Chaudhery's proposal within the legal definitions of elective courses, *the limits of the budget,* and terms of the HFT contract.
3. There is no change in the structure of the EFF (also known as the Newcomers) program which is part of the Hamtramck High School.

Agreement: Dr. Virinder Chaudhery
The agreement is reached to the satisfaction of both Administration and the individual member of HFT along with HFT Officials. The grievance is resolved with prejudice.

(*Id.*)(emphasis added).

Plaintiff acknowledges that "[t]he Union grievance was settled resulting in my reassignment as an art appreciation teacher for the 2007-2008 school year." (Plaintiff's Afft. at ¶ 12). Plaintiff was then reassigned to teach art classes, effective September 5, 2007. (*See* Ex. P to Def.'s Br.).

Although he has an extensive background in the arts and had requested to teach art classes, Plaintiff states that he was unhappy with teaching those classes:

13. In my art appreciation class I had more than 35 students. This was 10-15 more than any other class. I was given some of the most unruly and difficult students in the high school.

14. After I was reassigned as art teacher, I was not given any art supplies or textbooks. When I inquired into art supplies, Felix Chow and Patrick Victor both indicated to me that the school could not afford them. After persistent requests, I was given the sum of $250.00. This sum was not nearly enough to support and teach the class.

(Pl.'s Afft. at ¶¶ 13-14). The record does not reflect that Plaintiff filed any complaints or grievances with respect to his art classes.

On October 11, 2007, while he was teaching art classes, Plaintiff filed an amended Charge of Discrimination against Defendant with the Michigan Department of Civil Rights. (Ex.

M to Def.'s Motion). Plaintiff indicated that his charge of discrimination is based on race, national origin and age. He indicated that the latest date on which the discrimination occurred was December 14, 2006. (*Id*.). Plaintiff described the alleged discrimination as follows:

> I began employment with the above-named employer on September 8, 1998, as a Bilingual Teacher. My current position was that of ESL/Bilingual Counselor. I amend this charge to include age discrimination.
>
> On or about November 8, 2006, my position as ESL/Bilingual Counselor was reassigned to an At-Risk Counselor position. I was not aware of this reassignment and there were no documents to indicate the validity of such a reassignment. I was then informed that the position of At-Risk Counselor was going to be eliminated and that I should either bump another teacher or retire. I was not given the option of bumping a white counselor, who had less seniority than me.
>
> On or about December 14, 2006, I received a letter from the Superintendent indicating that I was being reassigned from an At-Risk Counselor to teach a Computer class. I was mandated to teach a Computer class for which I had not certification, no training, and no interest. I am aware that white employees are not treated in this manner.
>
> I believe I have been subjected to a change in job classification, and reassignment, because of my National Origin, East Indian, race, Asian/American, and age 67, in violation of Title VII of the Civil Rights Act of 1964, as amended and the Age Discrimination in Employment Act of 1967, as amended.

(*Id*.).[2]

On February 5, 2008, while teaching art classes, Plaintiff requested "a family medical leave of absence starting on Monday, March 18, 2008, for approximately 12 weeks, to care for [his] father-in-law." (Ex. U to Def.'s Br.).

Plaintiff filed this action on February 22, 2008.

On March 7, 2008, Plaintiff requested a "a personal leave of absence starting May 1, 2008

---

[2]The charge of discrimination made no reference to any complaints regarding Plaintiff's art classes and the record before the Court does not indicate that Plaintiff filed any other discrimination charges.

to June 16, 2008," and stated "[t]here are many personal reasons/issues that are affecting my family both in the United States, as well as in India that I cannot disclose to a third party." (Ex. W to Def.'s Br.). In that letter, Plaintiff stated, "I hope to return for the 2008/09 school years to serve the Hamtramck Public School District." (*Id.*). Plaintiff's request for the personal leave was approved. (Ex. X to Def.'s Br.).

Plaintiff retired effective July 1, 2008, as reflected in his July 28, 2008 e-mail to Defendant:

> As you know from the retirement office, I'm retiring from July 1st of this year. It has been a wonderful experience to serve Hamtramck Schools and its community. I will always have fond memories with everyone who has been kind to me. I wish you all a successful year and hope you will stay in touch. In case you ever need my help in any way, I will always be available. Please convey my regards to Dr. Niczay, Delores, and the staff.

(Ex. 4 to Def.'s Reply Br.)

## ANALYSIS

Count I of Plaintiff's complaint alleges race and national origin discrimination in violation of Title VII and Count II alleges age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Plaintiff alleges that Defendant discriminated against him based on his race, national origin and age when it reassigned him to the position of Computer Teacher on or about December 14, 2006. Plaintiff alleges that "Victor was the key actor" in that employment decision. (Pl.'s Br. at 3).[3]

At the summary judgment stage, a plaintiff must adduce either direct or circumstantial evidence to prevail on his discrimination claims. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir.

---

[3]Defendant disputes that Victor was a decision-maker with respect to Plaintiff's reassignment to a teaching position. Defendant contends that Chow was the sole decision-maker.

2004).

A. <u>Direct Evidence Approach:</u>

Direct evidence is evidence that is free of inferences and that, if believed, requires a finding that "unlawful discrimination was at least a motivating factor in the employer's actions. *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006). It does not require the fact finder to draw any inferences to reach that conclusion. *Id*. Evidence of discrimination is not considered direct evidence unless an unlawful motivation is explicitly expressed. *Id.*

In responding to Defendant's Motion for Summary Judgment, Plaintiff first takes the position that he need not rely on circumstantial evidence because direct evidence of race/national origin and age discrimination exists in this case.

With respect to his employment discrimination claim based upon race/national origin, Plaintiff contends that "direct evidence" exists in that "Victor has made inappropriate, racial comments *regarding immigrant students* on several occasions." (Pl.'s Resp. at 7)(emphasis added). Plaintiff submits, as Exhibit 9 to his Response Brief, an affidavit from Veronica Lassen ("Lassen"). Lassen states that, on unspecified occasions since 2000, Victor referred to immigrant students as "boaters" and on one unspecified date Victor referred to a group of African-American students as "F___ing blacks." (Lassen Afft. at ¶¶ 1-4). Plaintiff also relies on his own affidavit, wherein he states:

> I have witnessed Patrick Victor, when he becomes upset with Arabic and Bengali students say "where do these people come from, and why do they keep coming here." At one point I responded, "Is that what you think of me too?" He responded, "No, you are different."

(Plaintiff's Afft. at ¶ 16). Plaintiff's Affidavit does not identify the date of the alleged comment.

Plaintiff also contends that his own affidavit establishes direct evidence of age discrimination. In his affidavit, Plaintiff states:

> In a meeting to discuss my grievances with Thomas Niczay, the current Superintendent, he asked how old I was. After I responded, he commented that he thought I should retire and asked why I remained at the school. During the meeting he commented five separate times that he thought I should retire.

(Pl.'s Afft. at ¶ 15). Plaintiff's Affidavit does not identify the date on which the meeting in question took place.

The Court concludes that Plaintiff has failed to present direct evidence to support his claim that Defendant discriminated against him based on his race, national origin or age when it reassigned him to the position of Computer Teacher on or about December 14, 2006.

In discrimination cases, generally courts examine statements allegedly showing employer bias by considering whether the comments were made by a decision maker; whether they were related to the decision-making process; whether they were more than merely vague, ambiguous, or isolated remarks; and whether they were proximate in time to the act of termination. *Krohn v. Sedgwick James, Inc.,* 244 Mich.App. 289, 298 (2001).

As stated *supra*, direct evidence is evidence that is free of inferences and that, if believed, *requires* a finding that "unlawful discrimination was at least a motivating factor in the employer's actions. *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006). Evidence of discrimination is not considered direct evidence unless an unlawful motivation is explicitly expressed. *Id.* For example, a facially discriminatory employment policy or a corporate decision maker's express statement to remove employees in the protected groups is direct evidence. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

Such evidence was found to exist in *Johnson v. Univ. of Cincinnati*, 215 F.3d 561 (6th Cir. 2000), where the university president allegedly said that "[w]e already have two black vice presidents. I can't bring in a black provost." Those comments were found to constitute direct evidence of discrimination because they required no inference to conclude that racial consideration motivated, at least in part, the employment decision at issue.

Direct evidence of discrimination was also found to exist in *Diaz v. City of Inkster*, 2006 WL 2192929 (E.D. Mich. 2006), where the plaintiff alleged that he was discriminated against on the basis of race. In that case, the plaintiff offered testimony that the City Manager had said that there were some "members on the council that wanted a black chief" and "when [the current police chief] retires, you can bet the next chief is going to be black." *Id.* at *9. The court concluded that the comments of that decision-maker constituted direct evidence because they expressed that race was a determining factor in the employment decision at issue.

This Court found direct evidence of age discrimination to exist in *Parker v. Charter Township of Redford*, 2007 WL 1675219 (E.D. Mich. 2007). In that case, the plaintiff presented evidence to establish that Mr. Handy was the decision-maker with respect to the plaintiff's termination. Plaintiff also submitted evidence to establish that Mr. Handy, during a break from the township meeting in which the plaintiff's position had been discussed, said that the plaintiff "is old, he's been here to[o] long, it's time for him to go, he needs to get out and make room for a younger man." This Court concluded that the comments, which were related to the employment decision at issue and made by the person who made the decision, would constitute direct evidence of age discrimination if believed by the jury.

Unlike the plaintiffs in those cases, Plaintiff has not submitted any evidence in this case

10

that, **"*is free of inferences and that, if believed, requires a finding that unlawful discrimination was at least a motivating factor in the employer's actions*."** *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006)(emphasis added). For Plaintiff to support his case using direct evidence of discrimination, he cannot rely on the fact finder to draw any inferences to reach the conclusion that age, race and/or national origin discrimination was the motivation behind the reassignment. *Nguyen*, 229 F.3d at 563; *Amini,* 440 F.3d at 359; *Blair*, 505 F.3d at 524-25.

In order for a plaintiff to make the requisite showing with direct evidence, he or she "must present credible, direct evidence of wrongful discrimination," which "cannot be based on rumors, conclusory allegations, or subjective beliefs." *Hein v. All America Plywood Co., Inc.*, 232 F.3d 482 (6th Cir. 2000). "Nor can it be based on vague, ambiguous, or isolated remarks." *Phelps v. Yale Sec., Inc.*, 986 F.3d 1020 (6th Cir. 1993).

While the alleged comments by Victor about immigrant students and blacks are inappropriate and offensive, they are nevertheless isolated remarks. In addition, those alleged remarks were made about students, they were not directed toward Plaintiff or any other staff members. Moreover, the alleged comments do not bear any relation to the employment decision at issue in this case (i.e., the decision to reassign Plaintiff to a teaching position).

The alleged comments about Plaintiff retiring were made by Niczay, not the alleged decision-maker (Victor). While the isolated and ambiguous comments by Niczay may possibly favor Plaintiff's claim that he was reassigned due to his age, an inference would nevertheless be required.

Accordingly, the Court concludes that Plaintiff has failed to present direct evidence to support his claim that Defendant discriminated against him based on his race, national origin or

11

age when it reassigned him to the position of Computer Teacher on or about December 14, 2006.[4] Plaintiff must therefore establish a prima facie case under the circumstantial evidence approach.

B.     Circumstantial Evidence Approach:

Under the circumstantial evidence approach, a plaintiff must show the existence of facts which create an inference of discrimination under the familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). First, Plaintiff has the initial burden of establishing a prima facie case of discrimination. Once a plaintiff establishes such a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the Plaintiff's discharge. If the employer articulates such a reason, then the Plaintiff has the burden of showing that the articulated reason is in reality a pretext to mask discrimination. *Skrjanc v. Great Lkakes Power Service Co.*, 272 F.3d 309 (6th Cir. 2001).

1)     Prima Facie Case Of Discrimination:

To establish a prima facie case of discrimination based upon race/national origin and age, Plaintiff must establish: 1) that he is a member of a protected group; 2) that he was subject to an adverse employment decision; 3) that he was qualified for the position; and 4) that he was replaced by a person outside of the protected class or was treated differently than similarly-situated non-protected individuals. *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 538-39 (6th Cir. 2002); *see also Overly v. Covenant Transport, Inc.*, 178 Fed.Appx. 488, 491 (6th Cir. 2006)("The fourth prong of this test can also be satisfied through a showing that a 'comparable

---

[4]Or when it reassigned him, at his request, to a position teaching art classes.

non-protected person was treated better.'")

Here, there is no dispute that Plaintiff is a member of protected groups (race, national origin and age). There is also no dispute that Plaintiff was qualified for his counselor position. Defendant contends, however, Plaintiff cannot establish the remaining elements.

  a. <u>Adverse Action</u>:

In order to set forth a claim of discrimination, a plaintiff must show that he has suffered an adverse employment action; that is, he must establish that she has suffered a "materially adverse" change in the terms or conditions of employment because of the employer's action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000). The Sixth Circuit has explained that a materially adverse employment action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Watson v. City of Cleveland*, 202 Fed. Appx. 844, 854 (6th Cir. 2006).

Defendant contends that Plaintiff cannot establish a prima facie case of discrimination because he cannot establish that he suffered an adverse employment action. Defendant correctly notes that Plaintiff was not terminated, suspended, laid-off or disciplined. Rather, he was simply reassigned to a teaching position, at his same salary and with his same benefits, after his counseling position was eliminated. Defendant notes that a transfer or reassignment can constitute a constructive discharge in some circumstances, such that it is considered an adverse action. Citing *Policastro*, however, Defendant contends that Plaintiff's subjective impressions

13

about the desirability of one position over the other are not sufficient to establish a constructive discharge.

In responding to Defendant's motion, Plaintiff acknowledges that he remained employed following the reassignment and remained at his same salary. He contends, however, that he can establish an adverse action by establishing that he was constructively discharged (i.e., that his working conditions were so intolerable that a reasonable person in his shoes would have been compelled to leave). (Pl.'s Resp. at 9).

Plaintiff contends that the conditions he was subjected to would have compelled any reasonable person in his shoes to leave. Those alleged conditions are that: 1) "While in [his] position as computer teacher, [he] informed HPS that [he] had no background in computers either by formal training or personal use" (Pl.'s Afft. at ¶ 10); 2) He was not given a textbook to aid in teaching the class and his request for materials was denied (*Id.*); and 3) He told HPS that he could not type. (*Id.*).

The only case that Plaintiff cites in support of his position that he was constructively discharged is *Wolff v. Automobile Club*, 486 NW2d 75 (1992). Plaintiff's brief does not discuss the facts of that case or how they support his position.

The parties agree that, for purposes of establishing a prima facie case, a plaintiff who resigns may nevertheless establish an adverse employment action by demonstrating that he was "constructively discharged."

"To constitute a constructive discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee must actually quit." *Kuka v. Kuka Welding Sys.*, 171 F.3d

14

1073, 1080 (6th Cir. 1999). "In the case of constructive discharge, 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Goldmeier v. Allstate Ins. Co.*, 337 F.3d 629, 635 (6th Cir. 2003).

In determining whether an environment is one that a reasonable person would find hostile or abusive, courts look at all of the circumstances, which include: the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance. *Id.* The court also considers whether there has been a reduction in salary or benefits, reassignment to menial or degrading work, reassignment to work under a younger supervisor, badgering, or harassment. *Logan v. Denny's, Inc.*, 259 F.3d 558, 568-69 (6th Cir. 2001).

This analysis is inherently fact-specific and requires an inquiry into the objective feelings of the plaintiff as well as the intent of the defendant and the reasonably foreseeable impact of the defendant's conduct upon the plaintiff. *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 555 (6th Cir. 2008).

Under the facts presented here, the Court does not believe that a reasonable jury could conclude that Plaintiff's working conditions would have been so intolerable that a "reasonable person in the employee's shoes would have felt compelled to resign." *Goldmeier v. Allstate Ins. Co.*, 337 F.3d 629, 635 (6th Cir. 2003). Moreover, even if Plaintiff could establish that his working conditions were objectively intolerable, the Court finds that Plaintiff has failed to produce any evidence to establish that Defendant deliberately created intolerable working conditions or reassigned Plaintiff to the computer teaching position, or the art teaching position, to force Plaintiff to quit. *Lindsey v. Whirlpool Corp.*, 2008 WL 4428416 at *11 (6th Cir. 2008).

In December, 2006, Defendant experienced budget cuts requiring Defendant to lay off and/or reassign numerous employees in the district. (Ex. I to Def.'s Motion). On December 14, 2006, Defendant advised Plaintiff that Plaintiff was being reassigned to a position teaching computers. (Ex. G to Def.'s Motion).

It is undisputed that Plaintiff did not incur any reduction in salary or benefits following the reassignment. Nor does Plaintiff contend that he was reassigned to a position supervised by a younger supervisor or that he incurred any verbal or physical harassment while teaching the computer class.

Moreover, Plaintiff does not claim that he was reassigned to "menial or degrading work." Plaintiff does not complain that reassignment to a teaching position in itself was inappropriate. Rather, he contends that the reassignment to the position *teaching computers* was intolerable because he had no interest or experience in teaching that subject matter. Plaintiff's affidavit also states that he "was never given any textbook to aid in teaching the class. Request for materials was denied and as a result I struggled in teaching the class." (*Id.*).

It is undisputed, however, that *before Defendant reassigned Plaintiff to the position teaching a computer class*, Plaintiff had: 1) taught various sections of science, math and reading for Defendant. (Ex. 6 to Def.'s Reply Br.); 2) submitted a resume to Defendant (Ex. J to Def.'s Br.) that stated that he had prior teaching experience at the elementary and high school levels and, under the heading "Special Skills, Training, and Certifications," listed "Telecommunication/Production and Computer; Graphics, Audio-Visual, and Editing;" 3) been successfully employed in a position with Defendant that specifically listed "computer literacy" as one of the qualifications for the position (Ex. 4 to Pl.'s Br.); and 4) submitted a letter to

16

Defendant, in June of 2004, that stated "I have several years of teaching and administrative experiences at the middle school, high school, and college levels" and "I have taught all subjects at all levels." (Ex. N to Def.'s Motion). [5]

Nevertheless, *after* Plaintiff began teaching the computer class he filed a grievance[6] and informed HPS that [he] had no background in computers either by formal training or personal use" and that he "could not type." (Pl.'s Afft. at ¶ 10). In response, Defendant agreed to reassign Plaintiff to teaching classes in art -- a subject matter of his choice – and it is undisputed that Plaintiff began teaching art classes on September 7, 2007. Thus, Plaintiff only remained in the position teaching computers for approximately eight months. It is also undisputed that Plaintiff did not resign from his job during that eight month period. To the contrary, Plaintiff did not resign until July, 2008 – long after he stopped teaching the computer class,[7] and after he had been off work on a personal leave for several months to care for his father-in-law. In fact, Plaintiff was still employed by Defendant at the time he filed this action.

---

[5] It is also undisputed that the Michigan Department of Education does not require a teacher to hold any specific endorsements in order to teach a computer class; the teacher need only be certified to teach at the grade level in question. (*See* Ex. K to Def.'s Br.).

[6] Plaintiff states that during a single meeting to discuss his grievance with Thomas Niczay ("Niczay"), Niczay asked Plaintiff how old he was and "commented that he thought I should retire." (Pl.'s Afft. at ¶ 15).

[7] The Court notes that Plaintiff's counsel asserted, at oral argument, that Plaintiff's conditions teaching the art classes were also intolerable because he had more than 35 students in his class (although the applicable union contract specifically exempts art classes from the stated goal of limiting class size to 35 (*see* Ex. H to Def.'s Br. at 9-10)) and had what Plaintiff described as "unruly students." The Court does not believe that a reasonable jury could find that such conditions were so intolerable that a reasonable person in Plaintiff's shoes would be compelled to quit.

17

The Court finds that Plaintiff has failed to produce sufficient evidence to create a genuine issue of material fact as to whether he was constructively discharged and, therefore, Plaintiff has failed to establish a prima facie case.

      b.      <u>Treated Differently Than Similarly-Situated Individual</u>.

In addition, assuming *arguendo* that Plaintiff could establish an adverse action, the Court concludes that he would still fail to establish the final element of a prima facie case.

Here, Plaintiff claims that Defendant discriminated against him based on his race, national origin and age when it reassigned him to the position of Computer Teacher on or about December 14, 2006. Plaintiff does not allege that he was replaced by another employee. Thus, to establish the final element of his prima facie case, Plaintiff must establish that he was treated differently than similarly-situated individuals outside of the protected classes at issue (age, race and national origin).

"It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly-situated *in all respects*." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992)(emphasis in original). Thus, to be deemed similarly-situated, the individuals with whom Plaintiff seeks to compare his treatment must have been subject to the same standards "without such differentiating or mitigating circumstances" that would distinguish the employer's treatment. *Id.*

In his response, Plaintiff contends that one similarly situated employee, from outside the protected classes, was treated more favorably than he was. Although Plaintiff has not submitted any evidence to establish these assertions, Plaintiff asserts that at the time his counseling position was eliminated there were two other counseling positions that still existed at HHS, which were

18

filled by "Zacharias and Harpan." Plaintiff asserts that Allan Harpan ("Harpan") had less seniority than Plaintiff, that Harpan is "not of the protected class," and that Harpan was not transferred to a computer teaching position.

Plaintiff's brief acknowledges that Defendant challenges his ability to establish the final element of his prima facie case (i.e., that a similarly-situated, non-protected employee was treated more favorably than Plaintiff). Notably, however, Plaintiff has submitted no evidence to establish, among other things: 1) Harpan's position with Defendant or his date of hire;[8] 2) Harpan's age; 3) Harpan's national origin; or 4) Harpan's race. Without such evidence, Plaintiff has failed to establish that Harpan is even a "non-protected" employee with whom he can compare his treatment. The Court therefore concludes that Plaintiff has also failed to establish the final element of his prima facie case.[9]

## CONCLUSION & ORDER

For these reasons, IT IS ORDERED that Defendant's Motion for Summary Judgment is GRANTED and this action is hereby DISMISSED.

            S/Sean F. Cox
            Sean F. Cox
            United States District Judge

Dated: December 19, 2008

---

[8] At oral argument on December 4, 2008, Plaintiff's counsel asserted that Harpan's seniority was "undisputed," but Defense Counsel disagreed, stating that she did not know Harpan's date of hire. The Court then asked Plaintiff's counsel for Harpan's date of hire, which he could not provide, and there is no admissible evidence in the record establishing either Harpan's position or date of hire.

[9] Given that the Court finds that Plaintiff has failed to establish a prima facie case, the Court need not consider Defendant's additional arguments that it had a legitimate non-discriminatory reason for the challenged action (that the "At-Risk" funding for Plaintiff's position was lost) and that Plaintiff cannot establish pretext.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Virinder K. Chaudhery,

    Plaintiff,

v.                                                    Case No. 08-10601

Hamtramck Public Schools,                             Honorable Sean F. Cox

    Defendant.
_____/

## PROOF OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 19, 2008, by electronic and/or ordinary mail.

                    S/Jennifer Hernandez
                    Case Manager